Counsel, you may begin. Good morning, Judge. Ronald Coleman for the appellant. May it please the court. Your Honor, this is a situation where the district court essentially did everything right and then it did something inexplicable. It did something else. This was a summary judgment situation. Both parties moved for summary judgment. The prevailing party clearly was my client, Patsy's Brand. There was no evidence. This was a trademark infringement case. The record, everyone agreed, showed that there was no evidence of a likelihood of confusion. The court so found. Rather than proceed merely to then enter judgment for the defendant, the court instead issued an order to the TTAB concerning a registration of a trademark that was not part of the case. So now, if the court will permit me. Well, Mr. Coleman, excuse me. Could I? This is Judge Lynch. You say that you are the prevailing party and I understand your position that the district court found no dispute that there's no likelihood of confusion. But the district court didn't grant your motion for summary judgment. It didn't grant or deny it, and it didn't grant or deny the other side's motion for summary judgment. I also get your point that the district court proceeded to do something that neither side had asked for, as I understand it. But it it's a little hard to jump to the conclusion that the district court granted your motion when it didn't grant your motion. Well, Your Honor, that's an understandable point. And it's a point that was made by the athlete here, which argued that this appeal should not proceed because, after all, Patsy's brand won. And we made the argument that Your Honor just did, which was that, well, winning looks a little bit different. Winning when you have a motion, a dispositive motion, is that your dispositive motion is granted. So, yes, Your Honor, in terms of nomenclature, we were not, and that's why we're here today. This is Judge Kuhlman. Yes. Have either of the parties moved after this decision, moved Judge Stanton to decide the cross motions for summary judgment? No, Your Honor. Why not? Well, the case was closed, so it would have had to have been a motion, I think, you know, a motion for reconsideration, which, as the court knows, is not necessarily really a motion that's available under the federal rules. There was a real sense, I think, on the part of our client, whom we did not represent at the time, that, you know, a fresh look from the Second Circuit, which already was familiar with the underlying procedure and fact of this case, was appropriate here. But why is this, Judge Lynch, again, why isn't the right thing to do to send this back to Judge Stanton and ask him to rule and to explain why he did what he did? You're asking us, I think, in a certain way, to revisit the case from the ground up and decide the motions that the district court conspicuously refrained from deciding. Isn't that right? Only in a sort of abstract sense, but in a practical sense, Your Honor, the court found everything that was – obviously, this court has de novo review over the judgment here. And what the district court found was that there was no likelihood of confusion. But, excuse me, Mr. Coleman, if the district court found that, isn't that the justification? I mean, it's certainly a peculiar thing to do, I would agree with you, to then proceed to enter a direction to the patent office, which wasn't a party here. But doesn't that same ruling undercut the patent and trademark office's ruling denying your adversary's application for a trademark? Because that was based on a likelihood of confusion. And as you say, both parties now agree there is no likelihood of confusion. Well, Your Honor – They've agreed for a while now. There are two different – They've agreed for a while that there is no likelihood of confusion. Well, Your Honor, the stipulation here was that the plaintiff, who made an infringement claim, had failed to come forward with evidence of a likelihood of confusion. That's very different from stipulating in the abstract that there could be no likelihood of confusion between these two marks under any circumstances. This was a specific claim made by a specific – in a specific action. When there is a TTAB proceeding pending, the district court does not have jurisdiction to make a conclusion regarding a likelihood of confusion, especially when the other – the mark regarding which he entered the order was not in any way part of the litigation here. The question here was whether there was a – whether the plaintiff met its primitive obligation to prove a likelihood of confusion. So are you maintaining that the way you are aggrieved by this ruling is that you plan to go to the patent and trademark office and say there is a likelihood of confusion? In the unlikely event that the – well, the TTAB has already determined that there is a likelihood of confusion. We don't have to do that. We don't have to make that argument because the TTAB already has. But if the appellee were to prevail on its appeal in the TTAB, which is where this argument belongs, we would then be entitled to argue that not under the circumstances of this case, but that as between those two marks, there may be a likelihood of confusion. Not only are we entitled to argue that, the rest of the world is entitled to argue or to oppose publication of that mark, which Judge Stanton prevented from happening by entering this order. There was no publication. There was no opportunity for objection. This is Judge Walker. The mark that you're talking about is Patsy's of New York. That's your mark, right? That's an issue. That's our mark. Yes, Your Honor. And their mark is Patsy's Pizzeria. Patsy's Pizzeria. Patsy's Pizzeria. Correct, Your Honor. That's the mark that they – I just want to be clear on that. And you've got a trademark for your mark, 551 mark. Yes, I have a registration. I just would point out that I'm into my seventh minute now, and I had wanted to reserve time for a vote. That's okay. I asked you to reserve three minutes for a vote. I reserve three minutes, yes. Could I ask one other question, Mr. Coleman? Sure. Harking all the way back to 20 years ago, Judge Newman suggested from this bench and in an opinion, in effect, why can't you guys just get along? And why don't you each use your own trademarks and, you know, let a hundred flowers bloom? And that seems to me an even more compelling point today as we hear this argument from our homes, which you are making from your home or your office, because everything in New York City, including presumably both of your restaurants, is closed. The restaurant industry is on life support, and it's unclear whether any restaurant in the city is going to be able to survive all of this. And you guys are fighting over what 20 years ago I thought Judge Newman had a pretty good notion. They can be Patsy's Pizzeria. You can be, what was it, Patsy's Italian Restaurant of New York, and just let it go. Why are we doing this after 20-plus years of litigation? We got sued, Your Honor. Yeah, I know, but you're not complaining here about the outcome of the suit insofar as it charges infringement. You're complaining about your being frustrated in the effort to frustrate their use of their trademark before the PTO. That's what we're here for. That's the only way in which you are aggrieved by the ruling, right? No, Your Honor. We're aggrieved by not having gotten a judgment of summary judgment in a meritless case. We're entitled as a defendant charged by the plaintiff in the civil action with infringement of a judgment in our favor that there was no infringement. And whatever may happen in the TTAB, we can have the argument about letting a thousand flowers bloom, but we are entitled to judgment in this case. Whether or not we proceed, I'm in no way binding my client to oppose an adverse outcome in the TTAB, nor do we suspect that there's any reason to think that there would be an adverse outcome in the TTAB. Your time has expired. This is Judge Walker. I just wanted to ask a question. What is it precisely that you would like us to do? We would ask the court here merely to amend the judgment, which is within its power under the denial of review, to enter judgment in favor of the defendant here, of Patsy Brand, with prejudice. What would the judgment say? The judgment would say that the plaintiff's various claims for infringement are dismissed with prejudice. Okay. And what about the direction of the patent office? Once that order would be entered, the suspended proceedings of the TTAB would no longer be – would, upon notice of the final judgment by this court and the issuance of the mandate, the TTAB proceedings would be suspended. They would proceed with the TTAB appeal of the PTO's decision by IOB, and we would see what happens there. You want us to vacate that portion of the judgment that enters a direction to the PTO, right? Yes, Your Honor. That would be in addition to entering a final judgment in our favor. Correct. This is Judge Kula. Counsel, your time has expired. You have reserved three minutes for rebuttal. We'll hear from the appellee. Good morning, Your Honor. My name is Kimberly Maynard for the appellee. May it please the court. This appeal comes down to whether the trademark register should reflect the realities of the marketplace, reflect the realities of this court's prior acknowledgment of IOB's right to use its patent P3MR, and should reflect the lower court's finding that there was no likelihood of confusion. The answer to that is clearly yes, as Your Honor suggested. The parties should be able to move on from this. There is a finding of no likelihood of confusion. Counsel, this is Judge Kula again. Do you agree that Judge Stanton neglected to make findings on the cross-summary judgment motions? I agree that Judge Stanton did not issue an abundance of findings on the cross-summary judgment motions, but Judge Stanton did make some findings. He did find that there was no evidence of actual confusion, not that there was no evidence of likelihood of confusion in the record, but that there was no evidence of actual confusion. And he did find that there was no survey evidence of actual or likelihood of confusion. But I also believe Judge Stanton went beyond that. I believe Judge Stanton looked at the realities here and looked at the history of the parties, looked at the fact that IOB has superior rights in its patent P3MR. There is no argument here that IOB, which has been using its mark for 80 years, does not have a right to continue to use that mark. Do the parties agree that – Counsel, this is Judge Walker. My understanding was that he did what he did as far as the 149 and the 941 marks as a result of a finding of no confusion. There's nothing about superior marks in anything that he wrote there. I'm not sure you're right on that. And then my second question is, how does Section 37 apply here? That's basically a TTAB matter, and it's something that the courts will enter into if they have federal jurisdiction based upon a claim with respect to one of the registrations. But there was none of that here. He just sort of leapt ahead and decided, well, I found no infringement, therefore I'm going to grant – I'm going to shortcut what's going on down there at the TTAB and just order registration of your marks. And how does he have jurisdiction to do that? Well, Section 37 is very clear that – and the court's interpretation of Section 37 is very clear. Jurisdiction rises and falls with a valid infringement claim. Here there was an infringement claim. The court made a decision on that infringement claim. It found no likelihood of confusion. And because the court had jurisdiction on the infringement claim, it had concurrent jurisdiction under Section 37 to rectify the register, to make sure that the register conforms with the judgment of the court. And that's the entire purpose, I believe, of Section 37, which is to allow the parties and the courts to use your words, Your Honor, to skip over having to re-litigate this exact same issue, where there is a likelihood of confusion between the passes of New York marks and the passes P-3 and marks down in the trademark office again, and then potentially again in the Southern District of New York if the trademark office's decision gets appealed. Section 37 jurisdiction attaches one-third of an infringement claim. It doesn't – But Nike held that it creates a remedy for trademark infringement. There is no trademark infringement here. The finding was to the contrary. And so now we fall back on whether it's jurisdictional. And we're told in Nike that it's not jurisdictional. I don't think that's – It's remedial. Those are the words of the Supreme Court. Whatever you think. I mean, that's what the Supreme Court is telling us. Well, let me clarify for you. For Nike, in Nike, that was a declaratory judgment action. That was an action where the court found that it actually did not have jurisdiction to decide the infringement claim. That's not what happened here. The court had jurisdiction to decide the infringement claim. And then it went and it remedied the register so that it reflected the realities of that judgment and maximized judicial economy. But, Ms. Maynard, this is Judge Lynch. I'm having a little trouble, though, understanding how you get a remedy from the court by bringing an infringement claim, which apparently the district court thought was meritless. I understand that. And I won't deny that my client is pleased to be able to finally register. It's marked. But I think the remedy here is actually a remedy to correct the register and a remedy to make sure that the register reflects – does what it's supposed to do and reflect the realities of the marketplace. Did you ask for that in your claim? We did not ask for it directly, no. And with the benefit of hindsight, then that might be something that we would amend going forward, especially if this was remanded. But our complaint did make clear – you can look at paragraph 17 of the complaint, for example – make clear very early on that we were seeking a registration of the passage of the remarks and that we were also seeking to have the passage of New York registration canceled. So it was clear from the day one to all of the parties that IOB felt there was an entitlement to a registration of the passage of the remarks over and above or concurrently with the registration of the passage of New York remarks. So because of that, I think that what Judge Stanton did was exactly right. I think Judge Stanton used Section 37 in the manner that it was intended to  conform to the fact that IOB has been using its passage to remarks for more than 80 years and to prevent IOB from having to go back down to the trademark office, raise the same arguments, litigate the same issue in order to obtain a registration, or in this case face an adverse judgment by the trademark office. Well, but Ms. Maynard, the only reason – this is Judge Lynch again – the only reason to go back to the patent office is because you filed what turns out to be, at least according to Judge Stanton, I think, a meritless infringement claim. If you had just continued to litigate through that process and then appeal their judgment if it was adverse, it would be only one trip to the patent and trademark office and then one trip to the courts and you'd get a resolution. But instead you filed this action which – well, I mean, maybe it's jumping the gun to say you lost or the district court said it was meritless because the district court didn't actually say that. All the district court said was that there was no likelihood of confusion. But to say this is going to be inefficient now to send it back to the PTO is maybe – does that really work for you when you're the ones who took the thing out of there in the first place? Well, I take your point, Your Honor, and I agree that Judge Stanton did not say that this action was meritless. But I'll point out that we're not talking about just one trip in the trademark office. Had we proceeded in the trademark office and appealed that ruling to the southern district and then the southern district had directed the trademark office to register the mark, there's a likelihood, and counsel has indicated as much, that Patsy Brand may have even opposed registration, at which point we would have to litigate that again in the trademark office, possibly see that appealed to the southern district. But, again, back to your original point that this action was not meritless. IOB, when it brought this action, believed that there was a likelihood of confusion caused by the use of the Patsy's of New York mark in the marketplace. And so in that release, it caught an injunction against the use of the Patsy's of New York mark. That's released that Patsy's, I apologize, IOB could not get in the trademark office. And so by bringing the case to the district court, it was able to seek a more fulsome release. Now it's true that Judge Stanton decided that there was no likelihood of confusion here. And it's also true that IOB has decided to accept that finding. But with that acceptance, IOB is entitled to and should be able to move forward with its life and to have its registration for the Patsy's of New York. And to, to enjoy the benefits of a federal registration. This is Judge Fuller. Do you believe you got the relief you thought when you brought this action? No, your honor. I don't believe we got the relief that we thought when we brought the action, but my client, in the interest of moving forward and moving its life forward has decided to accept the, the order that there was no likelihood of confusion. And with that part, part and parcel to my client's decision to move on here and to not appeal that order is because it did get one of the things that is very important to them, which is the ability to have a registration for its mark. Now I see my time is up. If your honors don't have any other questions. Do you know of a case, do you know of a case where the federal, where the district court or the court of appeals has approved. I just ordered a patent, a decision in the patent office to, to register patents that have not been pled in the case in question. And where there is no patent, there's no, no, no patent issue being appealed. Yeah. No registration issue being appealed. Yes. I know. I can give you two. Yeah. Okay. One is massively Jiffy products. And that is in our brief at pages 43 and 45. And in that case, the ninth circuit actually ordered registration of an app of a mark for which an application. Had not even been filed yet. The other case I'll direct your honors attention to is the Tony foods court. Which is at page 45 of our brief. And in that case, the majority of the case focuses on an appeal. Of a petition to cancel in the trademark office. But if your honors. Read the case all the way through. You'll find that. I believe page nine 73 of that. That case, the court actually. Orders the trademark office. To amend an application. That was owned by the defendant. So we have one case where the court orders registration of an application that hasn't been filed yet. And we have another case where without even a request by the party. The court orders an amendment of an application in order to make sure that the register conforms to the judgment. Thank you. Thank you. Thank you. I see the motion fall in, sir.    Next up. You have three minutes. As a council. Mr. Coleman you've. Three minutes for rebuttal. Thank you, your honor. Just regarding those cases that were cited, we certainly know that the. Tony case was. Actually a case where there had already been. There's already been TTFE proceedings. We. We just make two points in rebuttal. One is that I think the court adequately apprehends here that. Section 37 of Atlanta Mac was never intended to be a get out of. TTAB proceedings free card. If you've got a pending TTAB proceeding. The fact that you think a district court would give you more. Fulsome relief that you can get in the TTAB is not. A grant or jurisdiction. To the district court to provide that. Secondly, counsel for IOB repeatedly used the phrase. The register should reflect the validity or the reality rather of the marketplace. There is no evidence in this record whatsoever concerning the marketplace. There was no evidence. There was a survey evidence. It was no evidence of confusion. There was no evidence. In fact of use of any trademarks. In this case. There was simply a lack of a finding of a primary facial element. And there was no evidence of confusion. To establish infringement of a trademark. So this court is in. No better of a position to reflect the reality of the marketplace and the TTAB. And in fact. We would submit is less. Is in less of a position because the TTAB is. Specifically provided with the tools. To make such a determination regarding a pending mark. Under the land of Mac as provided by Congress. Thank you. Council. Thank you. We'll reserve decision.